UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - v. -

SAMUEL SALMAN EL REDA,
  a/k/a "Samuel Salman El Reda El Reda,"
  a/k/a "Salman Raouf Salman,"
  a/k/a "Sulayman Rammal,"
  a/k/a "Salman Ramal,"
  a/k/a "Salman Raouf Salman,"
  a/k/a "Hajj,"

           Defendant.

**SEALED INDICTMENT**

19 Cr.

19 CRIM 776

- - - - - - - - - - - - - - - - - - - - - - - X

**COUNT ONE**
**(Provision of Material Support to Hizballah)**

The Grand Jury charges:

**OVERVIEW**

1. Hizballah is a Shia Islamic terrorist organization, backed by Iran since its inception, which is responsible for violent attacks and hundreds of murders dating back to the 1980s. The Islamic Jihad Organization ("IJO") is the component of Hizballah principally responsible for the planning and coordination of Hizballah's terrorist activities and related intelligence and counterintelligence operations.

2. Beginning in or about 1993, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman,"

a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, was a member of Hizballah and the IJO who participated in terrorist operations in, among other places, South America, Asia, and Lebanon.

3. SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, helped Hizballah plan and execute the July 18, 1994 bombing of the *Asociación Mutual Israelita Argentina* ("AMIA") building in Buenos Aires, Argentina, which killed 85 people and injured hundreds more.

4. Between at least in or about 2007 and in or about 2015, SAMUEL SALMAN EL REDA, a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, helped recruit, train, and manage IJO operatives. Acting principally from Lebanon, EL REDA deployed IJO operatives to Thailand, Panama, and Peru, among other places, to conduct pre-operational surveillance in support of attack planning and to assist in stockpiling explosive precursor chemicals such as ammonium nitrate.

Hizballah and Iran

5.  Hizballah was founded in the early 1980s with support from Iran after the 1982 military conflict between Lebanon and Israel. Hizballah's mission includes establishing a fundamentalist Islamic state pursuant to principles articulated in 1979 by Ayatollah Ruhollah Khomeini in connection with the Iranian Revolution.

6.  Since Hizballah's formation, the organization has been responsible for numerous terrorist attacks that have killed hundreds, including the 1983 bombing of the United States Marine barracks in Lebanon, which killed 241 Marines; the 1983 bombing of the United States Embassy in Beirut, which killed 24 people; and the 1985 hijacking of TWA Flight 847, which killed one U.S. citizen.

7.  In 1985, Hizballah issued an open letter embracing jihad and quoting Ayatollah Khomeini's view that the United States is the "root of all evil." Hizballah also declared in the 1985 letter that its priorities included removing Israel from South Lebanon "as a first step towards its total annihilation."

8.  Consistent with Hizballah's 1985 declaration, Iran has supported Hizballah since Hizballah was established. In the early 1980s, Iran sent approximately 1,500 officers from its Quds Force, which is part of Iran's Islamic Revolutionary Guard Corps

("IRGC"), to support Hizballah and train its military in South Lebanon in connection with the ongoing conflict with Israel. Iran has also provided hundreds of millions of dollars in financial support to Hizballah on an annual basis.

9. In 1997, the U.S. Secretary of State designated Hizballah as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act ("INA"), and Hizballah remains so designated. In 2010, State Department officials described Hizballah as the most technically capable terrorist group in the world, and a continued security threat to the United States.

Terrorist Activity by Hizballah's Islamic Jihad Organization

10. The IJO, which is also known as the "External Security Organization," "ESO," and "Unit 910," is the component of Hizballah that focuses on terrorism and intelligence-collection activities outside of Lebanon. Imad Mughniyeh was the IJO's first and longest-serving leader. Like SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, Mughniyeh has been charged by Argentine authorities for participating in the 1994 AMIA bombing.

4

11. Imad Mughniyeh was killed in Syria in 2008. Following Mughniyeh's death, Hizballah Secretary General Hassan Nasrallah declared "open war" on behalf of Hizballah. Following Nasrallah's declaration, Hizballah and the IJO, including SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, increased recruiting, training, and attack-planning efforts. In connection with those efforts, the IJO commenced a campaign of terrorist activities outside of Lebanon, some of which were successful and some of which were thwarted.

12. In January 2012, IJO operative Hussein Atris was detained in Thailand as he tried to board a flight at a Bangkok airport. Atris subsequently led law enforcement personnel to a commercial building near Bangkok that housed a cache of nearly 10,000 pounds of urea-based fertilizer and 10 gallons of ammonium nitrate, chemicals that can be used to construct explosives. The ammonium nitrate was stored in First Aid ice packs manufactured by a company in Guangzhou, China ("Guangzhou Company-1").

13. In July 2012, IJO operative Mouhamad Hassan Mouhamad El Husseini detonated explosives on a bus transporting Israeli tourists in the vicinity of an airport in Burgas, Bulgaria. Six people were killed and 32 others were injured. Law enforcement

authorities recovered three fraudulent, purportedly U.S.-based, driver's licenses during the investigation, subsequently linked the attack to the IJO, and determined that ammonium nitrate was an active ingredient in the explosives.

14. Also in July 2012, IJO operative Hossam Taleb Yaacoub was arrested after conducting surveillance of Israeli tourists in the vicinity of an airport in Larnaca, Cyprus. Law enforcement authorities seized from Yaacoub a notebook containing coded entries relating to, among other things, Israeli tour busses.

15. In May 2015, IJO operative Hussein Bassam Abdallah was arrested in Cyprus after Cypriot authorities seized from his apartment approximately 8.2 tons of ammonium nitrate, some of which was stored in First Aid ice packs manufactured by Guangzhou Company-1, the manufacturer of the First Aid ice packs seized in Thailand in January 2012.

16. In the fall of 2015, according to public reports, British authorities seized approximately three tons of ammonium nitrate linked to Hizballah from a location in London.

17. In June 2017, the Federal Bureau of Investigation arrested IJO operatives Ali Kourani and Samer El Debek based on their activities on behalf of Hizballah in the United States and elsewhere, including April 2009 travel by Kourani to Guangzhou, China, the location of Guangzhou Company-1; pre-operational

surveillance by Kourani of U.S. government facilities and international airports in the United States and Canada; and similar surveillance and explosives-related activities by El Debek in Central America and elsewhere.

### El Reda's IJO Activities

18. SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, was born in Colombia and is a dual Colombian-Lebanese citizen.

19. Beginning in or about 1987, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, established roots in Buenos Aires as well as South America's Tri-Border Area ("TBA"), consisting of Ciudad del Este, Paraguay, Puerto Iguazú, Argentina, and Foz do Iguaçu, Brazil.

20. Between in or about 1987 and in or about 1994, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, developed connections to, among others, Mohsen Rabbani, prominent Shia cleric and Iranian diplomat, and Assad Ahmad Barakat, a

Hizballah financier operating in the TBA with ties to Hizballah Secretary General Hassan Nasrallah.

21. In or about July 1994, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, helped coordinate the July 18, 1994 bombing of the AMIA building by carrying out IJO attack-planning operations in Buenos Aires and relaying information to IJO operatives, among others, in the TBA. For example, between July 1 and July 18, 1994 -- the day of the bombing -- EL REDA placed a series of calls from payphones in Buenos Aires to a cellphone subscribed in the name "André Marques" with an account in the TBA (the "Marques Phone").

22. Beginning at least in or about 2007, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, helped the IJO recruit, train, and deploy IJO operatives from Lebanon in connection with IJO attack-planning and intelligence-gathering operations.

23. In 2014, IJO operative Mohammed Ghaleb Hamdar was arrested in Peru. Peruvian authorities found traces of explosive chemicals on Hamdar's hands and in his apartment, and also seized

from the apartment photographs of Peruvian landmarks and buildings. In a post-arrest statement, Hamdar identified SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, as his IJO handler.

## STATUTORY ALLEGATIONS

24. From at least in or about 1993, up to and including in or about 2015, in Lebanon, Argentina, Panama, Thailand, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly provided and attempted to provide, and aided and abetted the provision of, "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b) -- to wit, tangible and intangible property, training, services, expert advice and assistance, and personnel (including himself) -- to a foreign terrorist organization, to wit, Hizballah, which at all relevant times was designated by the Secretary of State as a foreign terrorist

organization since 1997, pursuant to Section 219 of the INA, and is currently designated as such as of the date of the filing of this Indictment, knowing that Hizballah was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that Hizballah engages and has engaged in terrorist activity (as defined in section 212(a)(3)(B) of the INA), and that Hizballah engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

(Title 18, United States Code, Sections 2339B, 3238, and 2.)

## COUNT TWO
**(Conspiracy to Provide Material Support to Hizballah)**

The Grand Jury further charges:

25. The allegations contained in paragraphs 1 through 23 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

26. From at least in or about 1993, up to and including in or about 2015, in Lebanon, Argentina, Panama, Thailand, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the

defendant, who is expected to be first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b) -- to wit, tangible and intangible property, training, services, expert advice and assistance, and personnel (including himself) -- to a foreign terrorist organization, to wit, Hizballah, which at all relevant times was designated by the Secretary of State as a foreign terrorist organization since 1997, pursuant to Section 219 of the INA, and is currently designated as such as of the date of the filing of this Indictment.

27.  It was a part and an object of the conspiracy that SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, and others known and unknown, would and did knowingly agree to provide Hizballah with material support and resources, including tangible and intangible property, training, services, expert advice and assistance, and personnel (including EL REDA), knowing that Hizballah was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)), that Hizballah engages and has engaged in terrorist activity (as

defined in section 212(a)(3)(B) of the INA), and that Hizballah engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B.

**Overt Acts**

28. In furtherance of the conspiracy and to effect the illegal object thereof, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, and his co-conspirators committed the overt acts set forth below, among others:

    a. In or about December 1993, Mohsen Rabbani opened an account at a local branch of an international bank ("Bank-1") in Buenos Aires.

    b. Between in or about April 1994 and in or about July 1994, approximately $150,000 was transferred to Mohsen Rabbani's account at Bank-1, including three transfers from Bank Melli Iran, which was subsequently designated for sanctions by the U.S. Department of the Treasury based on efforts to provide support to the IRGC and other entities involved in Iran's nuclear and missile programs.

    c. On or about July 1, 1994, SAMUEL SALMAN EL

REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, placed a call from Ezeiza International Airport to the TBA-based Marques Phone.

    d. On or about July 15, 1994, Mohsen Rabbani placed a call from the vicinity of the AMIA building to the At-Tauhid mosque in the Floresta neighborhood of Buenos Aires.

    e. On or about July 15, 1994, following pre-attack surveillance by Rabbani in the vicinity of the AMIA building on the same day, EL REDA placed a call from the Floresta neighborhood of Buenos Aires to the Marques Phone.

    f. On or about July 18, 1994, EL REDA placed a call from Aeroparque Jorge Newbery to the Marques Phone.

    g. In or about May 2009, EL REDA instructed an IJO operative to travel to Thailand, to help destroy a cache of ammonium nitrate and other explosive materials that the IJO believed law enforcement was surveilling.

    h. In or about February 2011, EL REDA instructed an IJO operative to travel to Panama to conduct surveillance of the Panama Canal and Embassies maintained by the United States and Israel.

    i. In or about January 2012, EL REDA instructed an IJO operative to travel to Panama to conduct additional

13

surveillance of the Panama Canal.

(Title 18, United States Code, Sections 2339B and 3238.)

**COUNT THREE**
**(Aiding and Abetting the Receipt of**
**Military-Type Training from Hizballah)**

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 23 and paragraph 28 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

30. From at least in or about 2007, up to and including in or about 2008, in Lebanon and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, who is expected to be first brought to and arrested in the Southern District of New York, knowingly aided and abetted the receipt of military-type training by another from and on behalf of Hizballah, which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the INA, and is currently designated as such as of the date of the filing of this Indictment, knowing that Hizballah was a designated foreign

terrorist organization (as defined in Title 18, United States Code, Section 2339D(c)(4)), that Hizballah engages and has engaged in terrorist activity (as defined in section 212 of the INA), and that Hizballah engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), to wit, EL REDA caused one or more IJO operatives to receive training in the use of weapons and military tactics from other members of Hizballah.

(Title 18, United States Code, Sections 2339D, 3238, and 2.)

## COUNT FOUR
**(Conspiracy to Receive Military-type Training from Hizballah)**

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 23 and paragraph 28 of this Indictment are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

32. From at least in or about 2007, up to and including in or about 2008, in Lebanon and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, who is expected to be first

brought to and arrested in the Southern District of New York, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to receive military-type training from and on behalf of Hizballah, which at all relevant times was designated by the Secretary of State as a foreign terrorist organization since 1997, pursuant to Section 219 of the INA, and is currently designated as such as of the date of the filing of this Indictment.

      33.   It was a part and an object of the conspiracy that SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, and others known and unknown, would and did knowingly receive military-type training from and on behalf of Hizballah, knowing that Hizballah was a designated foreign terrorist organization (as defined in Title 18, United States Code, Section 2339D(c)(4)), that Hizballah engages and has engaged in terrorist activity (as defined in section 212 of the INA), and that Hizballah engages and has engaged in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339D.

**Overt Act**

34. In furtherance of the conspiracy and to effect the illegal object thereof, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, and his co-conspirators committed the overt act set forth below, among others:

    a. In or about 2008, EL REDA trained, and caused others to train, an IJO operative to use military-grade weapons, such as an AK-47 assault rifle and a Russian belt-fed machine gun, and destructive devices, including rocket-propelled grenade launchers ("RPGs") and explosives.

(Title 18, United States Code, Sections 371, 2339D, and 3238.)

FORFEITURE ALLEGATION

35. As a result of planning and perpetrating Federal crimes of terrorism against the United States, as defined in Title 18, United States Code, Section 2332b(g)(5), as alleged in Counts One, Two, Three, and Four of this Indictment, SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code,

Section 981(a)(1)(G) and Title 28, United States Code, Section 2461(c), any and all assets, foreign and domestic, of the defendant; any and all assets, foreign and domestic, affording the defendant a source of influence over any entity or organization engaged in planning or perpetrating said offense; any and all assets, foreign and domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting or concealing said offenses; any and all assets, foreign and domestic, derived from, involved in, or used or intended to be used to commit said offenses, including but not limited to a sum of money in United States currency representing the total amount of the defendant's assets.

Substitute Assets Provision

36.  If any of the above-described forfeitable property, as a result of any act or omission of SAMUEL SALMAN EL REDA, a/k/a "Samuel Salman El Reda El Reda," a/k/a "Salman Raouf Salman," a/k/a "Sulayman Rammal," a/k/a "Salman Ramal," a/k/a "Salman Raouf Salman," a/k/a "Hajj," the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the

Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982(a);
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON
10/30/19

_____
GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

SAMUEL SALMAN EL REDA,
a/k/a "Samuel Salman El Reda El Reda,"
a/k/a "Salman Raouf Salman,"
a/k/a "Sulayman Rammal,"
a/k/a "Salman Ramal,"
a/k/a "Salman Raouf Salman,"
a/k/a "Hajj,"

Defendant.

**SEALED INDICTMENT**

19 Cr.

(18 U.S.C. §§ 371, 2339B, 2339D, and 2.)

GEOFFREY S. BERMAN
United States Attorney.

A TRUE BILL

_____  Foreperson.

10/30/19

10/30/19  Filed Indictment W arrant issues
                                     Rott USMJ